EDWIN A. LOMBARD, Judge.
|,The Appellants, the City of New Orleans and ACS State and Local Solutions, Inc., seek review of the class certification of the Appellees, Stuart H. Smith, Rodney Stephens, David A. Veazey, Guadalupe Ga-mez, by the district court.[1] Finding that the district court did not abuse its discretion in certifying the class, we affirm.
FACTS AND PROCEDURAL HISTORY
In January of 2005, the City of New Orleans (“the City”) privatized its parking meter system and commenced replacing coin-operated parking meters with parking control pay stations known as Parkeon Pay Stations (“Pay Stations”) in certain areas of the City. The Pay Stations accepted credit and/or debit cards in addition to coins, and could service multiple parking spaces unlike the mechanical coin-operated meters.
In 2005, the City issued a Request for Proposals for a new Parking Ticket Management Systems and Services Contract pertaining to the Pay Stations. ACS State and Local Solutions, Inc., (“ACS”) was ultimately awarded the contract, |2which was executed on August 1, 2005. ACS had been providing parking ticket processing and collection services for the City prior to 2005 pursuant to a 1994 Parking Ticket Management Systems and Services Contract.[2]
On August 8, 2005, the City passed M.C.S., Ord. 22035, which updated the previous parking ordinances to accommodate the technological changes in the method of payment to include the Pay Stations.
On April 22, 2005, the Appellees filed a “Petition for Injunctive Relief, Declaratory Judgment, and Writ of Mandamus, Alternatively, Damages for Actions Pursuant to the Takings Clause of the Louisiana Constitution, LSA-Const. Art. I, § 4(B)” against the City as well as other defendants. Each of the named plaintiffs received parking citations between January 2005 and August 4, 2005, for not having a Pay Station parking receipt and for expired time.[3] See Smith v. City of New Orleans ex rel. Shires, 10-1464, p. 2 (La.App. 4 Cir. 7/6/11), 71 So.3d 525, 527. Additionally, Mr. Stephens, Ms. Gamez, and Mr. Veazey each received citations while being parked in front of Mr. Smith’s driveway, at respective times. Lastly, Mr. Veazey was cited for placing coins in the old coin-operated mechanical meter instead of the Pay Station system; and was cited for not having a parking receipt while parked in front of Mr. Smith’s driveway. Id. Since filing their initial Petition, the Appellees have twice filed amended and supplemental petitions and | ¡¡have also filed an Amended Restated Petition for Damages on March 31, 2008. ACS was added as a defendant in the Appellees’ Second Supplemental and Amending Petition.
Our Court issued an opinion in Smith, supra, addressing the two (2) separate partial summary judgments the district *515 court granted in favor of the Appellees and in favor of former defendant, Standard Parking Corporation and Parking Solutions, L.L.C., which installed the Pay Stations for the City. These judgments were unrelated to the issue of class certification. Therein our Court affirmed the partial summary judgment in favor of the Appel-lees and held that M.C.S., Ord. 22035 does not apply retroactively and is to be applied prospectively only beginning on August 8, 2005. Smith, 10-1464, p. 9, 71 So.3d at 531. Additionally, we held that citizens were entitled to notice that the Pay Stations were being used to issue citations in lieu of the coin-operated meters. Id.
The Appellees filed a Motion for Class Certification on July 25, 2005, which was opposed by both of the Appellants. The class certification hearing was later held on December 3, 2012. Subsequently, on February 20, 2013, the district court issued a judgment and written reasons for judgment, granting class certification.
In its judgment, the district court appointed the Appellees as class representatives and defined that class as follows:
All persons who were issued a parking citation for violation of Section 154-1086[4] of the Code of Ordinances |4for the City of New Orleans or other meter violation in connection with a multi-space pay station sometimes referred to as Parkeon Pay Station location in the City of New Orleans through August 4, 2005, and all persons who paid for parking in the City of New Orleans through a multi-space pay station sometimes referred to as Parkeon Pay Station with a credit card, debit card, or smart card through August 4, 2005.
Both of the Appellants timely and separately filed motions for appeal in the district court and the instant appeal followed.[5] As the City was the first party to file its Appellant’s brief, it is the first Appellant and ACS is the second Appellant.
ASSIGNMENTS OF ERROR
The following assignments of error are raised by both the City and ACS:
1. Pursuant to La.Code of Civ. Pro. art. 591(A), the class cannot be objectively defined, and fails to meet the requirements of commonality, *516 and of typicality and adequacy of representation.
2. The predominance requirement of La.Code of Civ. Pro. art. 591(B)(3) was not satisfied.
]KWe shall address the requirements of predominance and commonality jointly because our jurisprudence recognizes that the two requirements are connected. Thus, the above referenced assignments will be discussed respectively under one assignment of error.
Lastly, ACS argues that the district court erred by ruling on purported “common” issues in violation of article 592(d).
STANDARD OF REVIEW
The Supreme Court has explained that when reviewing a district court’s factual findings regarding class certification, a manifest' error standard is applicable; however, a district court’s “ultimate decision of whether or not to certify the class is reviewed under the abuse of discretion standard.” Dupree v. Lafayette Ins. Co., 09-2602, pp. 7-8, (La.11/30/10), 51 So.3d 673, 680. [Citations omitted]. “Implicit in this deferential standard is recognition of the essentially factual basis of the certification inquiry and of the district court’s inherent power to manage and control pending litigation. Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo.” Doe v. S. Gyms, LLC, 12-1566, p. 9 (La.3/19/13), 112 So.3d 822, 830 [citations omitted].
ASSIGNMENTS OF ERROR ALLEGED UNDER ART. 591(A) AND (B)
A. An Objectively Defined Class
The Appellants argue that the putative class of the Appellees cannot be objectively defined. They argue that the district court did not provide a clear identity of the putative class; consequently, the district court has created an overly broad and vague class.
|fiThe City argues that the class created by the district court creates four distinct potential claimants: 1) persons who paid for parking utilizing a Pay Station and who were cited for a violation; 2) persons who paid for parking utilizing a Pay Station using a debit, credit or a smart card, but were not cited for an offense; 3) persons who paid a traditional coin operated meter and received a citation; and 4) persons who did not pay for parking and received a citation.
The City argues that every person who paid for parking, regardless of whether such person was issued a citation, is a class-member. Thus, the City argues that persons without demonstrable damages have standing to bring suit under the district court’s class-definition, which is improper.
The City further argues that the vagueness of the class definition is evidenced by the fact that it encompasses all persons who were issued a parking citation for any “other meter violation”, which is an undefined term. The broadness of the terminology used by the district court, the City avers, insufficiently provides potential class members with information to determine whether they are indeed class members. The City argues that the current definition conveys class status to any person who received a parking citation for any violation because he or she utilized a Pay Station to pay for parking with a credit, debit or smart card.[6]
The City avers that a possible result of applying such a broad class definition is *517 that the current class definition includes persons who received citations for parking too closely to a fire hydrant or just because they used a Pay Station to pay. In these and similar instances, a person’s usage of the Pay Station is unrelated to the citation he or she received.
|7The City also argues that the class definition does not provide a start date to inform putative class members of when the alleged improper issuance of citations and collection of fees by the Appellants began. An end date of August 4, 2005, however, is provided by the district court in its class definition. Therefore, the City avers that the lack of an applicable start date, such as January 1, 2005, when the Pay Stations were first implemented by the City, adds further to the lack of clarity created by the district court’s class definition.
Additionally, ACS argues that it is affected by two categories of potential putative claimants: 1) persons who paid for parking by using a credit or debit card in a Pay Station, or 2) a person who received citations resulting from his or her failure to display Pay Station stubs or receipts during the applicable time period.
ACS contends that the class definition is overly broad, pursuant to Eastin v. Entergy Corp., 97-1094 (La.App. 5 Cir. 4/15/98), 710 So.2d 835, because it includes persons who are not entitled to the relief sought. It argues that the Appellants seek damages from ACS alleging that it improperly converted their funds, but ACS maintains that the Court must conduct a rigorous analysis of whether the putative class-member claims are susceptible of class-wide proof under Price v. Martin, 11-0853 (La.12/6/11), 79 So.3d 960 and Wal-Mart Stores, Inc. v. Dukes, _ U.S. _, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011). ACS maintains that the claims of the certified class in the instant matter are insusceptible of class-wide proof; thus, the district court would be required to individually determine whether each class member had even sustained damages as a result of ACS alleged conduct.
ACS further points while the class members allege that ACS converted funds, there is no proof that ACS committed conversion. ACS avers the persons |8who used debit or credit cards, but did not receive a citation, do not have a claim for conversion against ACS, nor do persons who never paid a citation have a claim against ACS. ACS explains that persons who used debit or credit cards to pay for parking at a Pay Station and did not receive a citation, never came into contact with ACS because it did not collect monies paid to the Pay Stations. Thus, such persons have no standing to sue ACS. Moreover, ACS argues that persons who never paid a citation have no claims against ACS because they have no damages, even if those citations were paid by a third party. ACS argues that the burden is on the Appellees to establish that there is a causal connection between the defendant’s alleged tortious conduct and the plaintiffs’ damages.
One of the requirements under La.Code of Civ. Proc art. 591(A) is that the class be defined objectively in terms of ascertainable criteria, “such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.” The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class. Clement v. Occidental Chemical Corp., 97-0246, p. 9 (La.App. 5 Cir. 9/17/97), 699 So.2d 1110, 1114. Thus, the parties seeking certification must be able to establish a definable group of aggrieved *518 persons based on objective criteria derived from the operative facts of the case. Chalona v. Louisiana Citizens Prop. Ins. Corp., 08-0257, p. 9 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 502 [citation omitted].
In the instant matter, the class, as defined by the district court, is:
All persons who were issued a parking citation for violation of Section 154-1086 of the Code of Ordinances for the City of New Orleans or other meter violation in | ¡¡connection with a multi-space pay station sometimes referred to as Parkeon Pay Station location in the City of New Orleans through August 4, 2005, and all persons who paid for parking in the City of New Orleans through a multi-space pay station sometimes referred to as Parkeon Pay Station with a credit card, debit card, or smart card through August 4, 2005.
Moreover, the district court further explained in its Reasons for Judgment that the Appellants provided sample spreadsheets with information identifying proposed class members and, thus, the class definition is not too broad and can be adequately and objectively defined.
We find that the district court made clear that the class is limited to persons who fall within two categories:
1. persons who were issued a parking citation, under Section 154-1086 of the Code of Ordinances for the City of New Orleans or other meter violation, in connection with the Pay Station; or
2. persons who paid for parking in the City of New Orleans through the Pay Station with a credit card, debit card, or smart card through August 4, 2005.
The definition is clear in that putative class members must have either received a citation issued in connection with a Pay Station, or paid for parking with a credit card, debit card or smart card using a Pay Station through August 4, 2005. The Judgment does not provide a start date for those persons who were issued or paid the subject citations, but such information is unnecessary to determine whether one falls into either of the aforementioned categories. A person could not, for instance, have a valid claim to be a putative class member based on receiving a citation or paying for parking using a Pay Station prior to January of 2005, when the Pay Stations were not located in the City at that time.
|10Moreover, the City and ACS can easily verify the validity of the majority of putative class members’ class status by reviewing their own citation and business records to ascertain whether citations related to the Pay Stations were issued within the applicable time frame. See Chalona, 08-0257, p. 10, 3 So.3d at 502-03. Thus, we do not find that the district court manifestly erred in holding that the class was objectively defined and that potential claimants are sufficiently alerted to the fact that he or she may be a class member by the district court’s definition.
Lastly, with regard to the argument of ACS that the class will include persons who have no viable claims against ACS, our Court has explained that a certification hearing is not the appropriate venue to determine the merits of a case:
A certification hearing does not determine liability. It is not the correct venue to decide the merits of the case or defenses the defendants may allege. Those matters are to be resolved at the trial on the merits.
Chalona, 08-0257, pp. 10-11, 3 So.3d at 503 [citation omitted].
*519 B. Commonality and Predominance
The City argues that there is a heightened commonality requirement that our Louisiana Supreme Court applies to class actions, which was adopted from Wal-Mart Stores, Inc. v. Dukes, _ U.S. _, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011). The requirement is such that each class member must be able to prove individual causation based on an identical set of operative facts and law used by any other class member. The Appellees, the City avers, failed to meet this requirement because they failed to prove the necessary element of individual causation based on the same set of operative facts and law that would be used by any other class member. The City avers that causation and damages are dependent upon proof of facts of each putative class member.
| nThe City argues that the question to be examined is why each and every class member received a citation during the specified time. The City argues that factors, such as the location of the class members’ vehicles, the form of payment used, whether the class member paid a meter, whether the person who parked the subject vehicle is the owner of the vehicle, are factors that are widely varied and would not be common to each member. Thus, the facts surrounding each class member’s claim are too distinct and would require a case-by-case analysis, which would defeat the purpose of certifying a class. Moreover, the City argues that the interests of the named plaintiffs/Appellees conflict with those of the unnamed class members because some of the named class members alleged a takings claim as a result of being parked in or blocking class member Smith’s driveway.
Thus, the distinct facts would require a case-by-case analysis due to the factually distinct claims of class members, which defeats the purpose of class certification. The City further maintains that the interests of the five (5) named plaintiffs conflict with those of the unnamed class members.
Moreover, ACS contends that the test of commonality contained in La.Code of Civ. Proc. art. 591(A) requires that “there be at least one issue whose resolution will affect all or a significant number of the putative class members.” ACS, relying upon Dukes and Price, supra, argues that the only common question that will satisfy this requirement are those questions that may be expected to advance the litigation.
ACS contends that the Appellees have identified in brief and at the class certification hearing the following common issues:
• whether there existed a legal basis for the collection of fines related to the Pay Stations prior to August 5, 2005;
11?» whether there existed a legal basis for the enforcement of parking citations related to the Pay Stations prior to August 5, 2005;
• whether the defendants/Appellants were negligent in the collection of said fines or the enforcement of the said citations; and
• whether the violation of fees and fines under this system allow for compensation to all the victims of the system.
Asserting that any issue can be abstracted enough to create a common question, ACS avers that the inquiry that is integral in this matter is whether the answer to any of these questions will resolve an issue that is central to the validity of each one of claims levied against it. It argues that the answer is no.
ACS further avers that the Appellees’ claims are insusceptible of class-wide proof because there are persons who never paid their citations or had their citations paid by third parties. ACS argues that it can assert a lack of payment defense against the class members who did not pay their *520 citations. Additionally, it argues that it only served as an agent to collect and deposit fines into the City’s accounts. Consequently, even persons who did pay fines would have to demonstrate more than that they made a fine payment to establish ACS’ liability. ACS avers that such defenses required individualized proof, which exposes the fact that the Ap-pellees’ purported common questions are not common.
The commonality requirement requires that a party seeking class certification show that “[t]here are questions of law or fact common to the class.” La. Code Civ. Proc. art. 591(A)(2). “Commonality requires a party seeking certification to demonstrate the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution — one where the ‘determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.’ ” Price, 11-0853, p. 10, 79 So.3d at 969 (citing Wal-Mart Stores, Inc., 131 S.Ct. at 2551). Furthermore, the commonality factor requires the existence of a common nucleus of operative facts within the totality of the issues. Dupree v. Lafayette Ins. Co., 09-2602, p. 11 (La.11/30/10), 51 So.3d 673, 682-83. Lastly, we recognize that the mere existence of common questions will not satisfy the commonality requirement as any “competently crafted class complaint literally raises common questions”. Price, 11-0853, p. 10, 79 So.3d at 969 (citing Wal-Mart Stores, Inc., 131 S.Ct. at 2551).
Furthermore, related to the commonality requirement is the requirement of predominance. An inquiry into predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Guidry v. Dow Chem. Co., 12-0436, p. 6 (La.App. 4 Cir. 11/14/12), 105 So.3d 900, 905 (citing Brooks v. Union Pacific R. Co., 08-2035 (La.5/22/09), 13 So.3d 546, 554). Pursuant to art. 591(B)(3), plaintiffs are required to establish only that either common issues of law or common issues of fact predominate over any issues affecting only individual members. In order for a case to proceed as a class action, “there must be ‘significant proof,’ subject to ‘rigorous analysis,’ of a common question — one where the ‘determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.’ ” Price, 11-0853, p. 21, 79 So.3d at 975.
The district court specifically held in its judgment, regarding the predominance requirement of La.Code of Civ. Proc. art. 591(B)(3), that the class certification applies:
with respect to all claims for damages associated with the installation and implementation of the Parkeon System in the City of New Orleans including the collection of fees [14in connection with the Parkeon Pay Stations and/or the enforcement of parking citations issued with the Parkeon System ...
Additionally, in its Reasons for Judgment, the district court expounded on how the predominance and commonality requirements were met. The district court explained in its Reasons for Judgment that, unlike the plaintiffs in Alexander v. Norfolk Southern Corp., 11-2793 (La.3/9/12), 82 So.3d 1234, individual, personal or underlying factors are immaterial because the issue of alleged illegal parking citations does not require anything more than receipt of a parking citation to be adversely affected.[7]
*521 We note that the district court’s explanation of how the commonality and predominance factors are met partially contradicts the class definition. The class definition of the district court encompasses not only those persons who received a parking citation, but those who paid the subject citations as well. Yet, the Court’s rationale for finding that commonality and predominance requirements were met is that receipt of a parking citation is the only proof required to establish these elements.
Nevertheless, it appears that both common issues of fact and law unite the class. Factually, all class members share being affected by the City’s issuance of | ^citations related to the Pay Stations because class members will have either received and/or paid a citation. Moreover, the common issue of law that predominates this class is whether such parking citations were illegally issued prior to M.C.S., Ord. 22035 becoming effective, (i.e. is there any legal basis for issuing the citations at the time they were issued). Thus, we find that the district court did not manifestly err in determining that the commonality and predominance requirements were met. These assignments of error are without merit.
Lastly, the Appellants’ arguments pertaining to the Appellees’ claims under the Takings Clause of the Louisiana Constitution are irrelevant to our review because the district court did not maintain the instant class action as to those claims.
C. Typicality and Adequacy of Representation
The Appellants argue that the district court erred in maintaining this case as a class action because the claims of the class representatives are not typical of members of the class. They argue that the Appellees’ claims are not a cross-section of the claims of all class members because their claims do not arise out of the operation of the Pay Stations, but as a result of the named plaintiffs receiving citations while parked in front of Plaintiff Smith’s driveway. The Appellants re-urge that Appellee Smith asserted a takings claim regarding his alleged driveway, and that he and Neal Laney assert a claim alleging that the Pay Stations do not conform to the “tout ensemble” of the French Quarter. The Appellants further argue that the Appellees cannot adequately protect the interests of the class because their citations were dismissed. The Appellants rely upon Defraites v. State Farm Mut. Auto. Ins. Co., 10-78 (La.App. 5 Cir. 6/29/10), 44 So.3d 762, wherein the Fifth Circuit held that a named plaintiff could not adequately represent the class because his claim was settled.
Typicality and adequacy of representation under La.Code of Civ. Proc. art. 591(A) requires that the claims of the class representatives be a cross-section of *522 the claims of all class members. Walker v. AMID/Metro P’ship, LLC, 12-0285, p. 14 (La.App. 4 Cir. 1/16/13), 109 So.3d 35, 44, writ denied, 13-0601 (La.4/26/13), 112 So.3d 844 and writ denied, 13-0602 (La.4/26/13), 112 So.3d 845. The typicality requirement “is satisfied if the claims of the class representatives arises out of the same event, practice, or course of conduct giving rise to the claims of the other class members, and are based on the same legal theory.” Guidry v. Dow Chem. Co., 12-0436, p. 8 (La.App. 4 Cir. 11/14/12), 105 So.3d 900, 906 (citing Boyd v. Allied Signal, Inc., 03-1840 (La.App. 1 Cir. 12/30/04), 898 So.2d 450, 464).
The district court explained that the claims of the Appellees are typical of the class because the Appellees were all allegedly issued improper parking citations. In light of this fact, the court found that the circumstances surrounding the issuance and subsequent dismissal or resolution of the citations are immaterial.
In the instant case, as previously noted, the takings claims and the claims regarding the “tout ensemble” of the French Quarter are irrelevant because neither claim was maintained by the district court.
Furthermore, the claims of the Appel-lees all arise out of the issuance of parking citations that were unauthorized under the Municipal Code. The Appellees and other class members will share the argument that the City and ACS lacked the legal authority to issue the citations and collect fines related to the Pay Stations during the applicable time period. Lastly, albeit that some of the citations of the | i7Appellees were administratively dismissed, the relief the Appellees seek includes the return of monies paid to the Pay Stations during the applicable period as well as other compensatory damages, and declaratory and injunctive relief. Thus, the claims of the Appellees are typical of what all potential members of the class would seek. Therefore, we find that the district court did not manifestly err in determining that the typicality and adequacy of representation requirements were met. This assignment of error is without merit.
THE DISTRICT COURT VIOLATED LA. CODE OF CIV. PROC. ART. 592(D)
ACS argues that the district court erred by certifying the class against ACS after ruling on purported “common” issues in violation of La.Code of Civ. Proc. art. 592(A)(3)(d). As noted above, the district court granted the Appellees’ partial motion for summary judgment on June 17, 2010. In its judgment, the district court ruled that the M.C.S., Ord. 22035 did not apply retroactively from the date that the ordinance became effective and, thus, the operation of the Pay Stations was illegal prior to the ordinance’s effective date. ACS argues that because the district court granted the Appellees’ partial motion for summary judgment it erred by later certifying the class against ACS pursuant to La.Code of Civ. Proc. art. 592(A)(3)(d), which provides:
No order contemplated in this Subpara-graph shall be rendered after a judgment or partial judgment on the merits of common issues has been rendered against the party opposing the class and over such party’s objection.
ACS argues that the district court’s June 17, 2010 judgment disposed of at least two of the alleged “common” issues the Appellees identified, such as whether there existed a legal basis for the collection of fines related to the Pay Stations prior to August 5, 2005, and whether there existed a legal basis for the enforcement |18of parking citations related to the Pay Stations prior to August 5, 2005. Conse *523 quently, ACS argues that the district court erred in certifying the class when it has rendered a judgment on the merits of purportedly common issues against ACS.
The Appellees assert that the district court can consider a dispositive motion prior to a determination of whether a case may be maintained as a class action under Clark v. Shackelford Farms Partnership, 38,749 (La.App. 2 Cir. 8/18/04), 880 So.2d 225, 228. The Appellees further argue that the judgment granting the partial motion for summary judgment was not a judgment on the merits on a common issue because the district court did not hold that no legal basis existed for the collection of fees in connection with the Pay Stations and/or the enforcement of parking citations issues as a result of the Pay Station System on or before August 4, 2005, nor did the district court hold that ACS and/or the City were liable to the Appellees. Lastly, the Appellees argue that ACS neither opposed the partial motion for summary judgment, nor the class prior to the partial motion for summary judgment being granted. Thus, the Appellees assert that La.Code of Civ. Proc. art. 592 does not bar the maintenance of the instant case as a class action. We agree.
The district court did not adjudicate any of the common issues raised in this matter when the court rendered its June 17, 2010 judgment. As the Appellees note, the district court only ruled on non-retroactive application of the MCS ordinance, but did not render a decision as to whether any other legal basis would uphold the issuance of citations prior to the statute becoming effective. Additionally, the district court did not hold either of the Appellants liable for any of their alleged Inactivities in connection with the Pay Stations prior to the effective date of the ordinance. We, therefore, find that this assignment of error is without merit.
Decree
For the foregoing reasons, the judgment of the district court certifying the class action of Appellees Stuart H. Smith, Rodney Stephens, David A. Veazey, Guadalupe Gamez, is affirmed.
AFFIRMED.

. Plaintiff Neal Laney was not included as a class representative by the district court.

. ACS purchased a division of Lockheed Martin that had contracted with the City to collect fines related to the City’s issuance of parking citations pursuant to a 1994 Parking Ticket Management Systems and Services Contract ("the Parking Contract”). ACS acquired all rights and obligations executed under the Parking Contract. The original contract was for a three-year period ending on April 30, 1997; however, the parties extended the term of the contract through various agreements. The last agreement was executed in October 2004, and therein the parties agreed that ACS would continue to provide parking ticket processing and collection services for a six-month period ending in early 2005.

.A citation for not having a parking receipt would be issued if there was no Pay Station ticket/receipt in the windshield of the cited vehicle.

. The Code of Ordinances for the City of New Orleans Sec. 154-1086, entitled When use required; prohibited, currently provides:
(a) On those sections of city streets where parking is regulated at metered spaces, parking is permitted on the days and between the hours of operation posted for the intervals of time as indicated by the single/double space parking meters, multispace pay stations, on-line parking services (OPS), or on signs installed by the authority of the director of the department of public works in conjunction with such single/double space parking meters, multispace pay stations, or OPS meter spaces.
(b) It shall be unlawful for a vehicle to be parked in a metered space on the days and between the hours of operation indicated in paragraph (a) above, when the specified payment has not been made for use of the metered space and the single/double space parking meter, multispace pay station or OPS indicates that such payment has not been made, or when signage indicates that such space is not a legal parking space at that time. It shall be lawful to park in such legal parking spaces on public holidays, as defined in section 154-2, without payment of the specified amount, regardless of the presence of single/double space parking meters, multispace pay stations or OPS which might at other times regulate such space.
(c)It shall be unlawful for a vehicle to be parked at any time in a metered space when a locked bag or hood has been placed upon such single/double space parking meter.

. The City filed a motion for a suspensive appeal and ACS filed a motion for a devolu-tive appeal.

. We note that the class does not include persons who used the Pay Stations by paying with coins, which the Pay Stations do accept.

. In Alexander, the Supreme Court extensively discussed the predominance requirement of *521 La.Code Civ. P. art. 591(B)(3) as it applied to putative class members who sought class certification to seek damages as a result of allegedly being impacted by a release of chemicals from parked railroad cars. The district court granted class certification, which our Court affirmed on appeal. The Supreme Court ultimately held that each member of the proposed class will necessarily have to offer different facts to establish liability and damages which controverts the purpose of preventing class certification from degenerating into a series of individual trials. Id., 11-2793, p. 3, 82 So.3d 1234, 1236. The Supreme Court held that common issues of law and fact did not predominate because there was "undisputed evidence in the record demonstrating that any determination of damages will be dependent upon proof of facts individual to each putative class member” regarding whether they had a unique susceptibility to the released chemical. Id., 11-2793, p. 3, 82 So.3d 1234, 1236.